**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOME BUILDERS ASSOCIATION | ) | Case No.  09-44080 |
| OF GREATER CHICAGO | ) | |
| (Tin: 23-7260523) | ) | Hon. Susan Pierson Sonderby |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF FINAL**
**APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF**
**PLAN OF REORGANIZATION FOR HBAGC DATED FEBRUARY 17, 2010**

The Home Builders Association of Greater Chicago, the above-captioned debtor and debtor in possession (the "*Debtor*" or "*HBAGC*"), respectfully submits this memorandum of law (the "*Memorandum*") in support of final approval of the Disclosure Statement for the Plan of Reorganization for HBAGC Date February 17, 2010 (the "*Disclosure Statement*") and confirmation of the Plan of Reorganization for HBAGC Date February 17, 2010 (the "*Plan*").[1]

### I.     INTRODUCTION

The HBAGC is a not for profit organization under Illinois law.  It is arguably one of the first associations of home builders in the U.S., having been started over 70 years ago by professional businessmen, in an effort to provide housing for America's returning World War II veterans.  Throughout its storied history, HBAGC has been a leading voice in the home building industry, working with government officials from Councilmen to Congressmen to shape and enhance the housing climate throughout the nation.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Plan.

At its height, HBAGC included over 1,500 builder and associate members. Its charter encompasses eight counties in Northeastern Illinois, establishing the most populous territory in the Midwest. However, the last several years have witnessed a sharp decline in the housing market, including the market in the Midwestern United States. The decline has had a devastating impact upon businesses whose revenue and profits are linked to the health of that industry, many of which are, or were, members of the HBAGC. Due to business closures, re-sizings and overall lack of activity and revenue, HBAGC's own membership declined from approximately 1,500 to its current roster of approximately 400. This has caused a substantial loss of dues revenue for the HBAGC. The loss in dues revenue was compounded by losses on regional trade shows hosted by HBAGC, including the Midwest Builders Show and the Midwest Home and Garden Expo. All of these factors precipitated the need for the HBAGC to seek protection under Chapter 11.

On February 25, 2010, the Court conditionally approved the Disclosure Statement in this small business case pursuant to 11 U.S.C. § 1125(f)(3), and the Disclosure Statement was subsequently served on all known creditors and parties in interest. The Court should now finally approve the Disclosure Statement because the Disclosure Statement provided adequate information as required by 11 U.S.C. § 1125(b). In addition, the Court should confirm the Plan for the following reasons:

*First*, the Debtor believes that the Plan provides all unsecured creditors with the best return possible on account of their respective Allowed Claims. As explained in the Disclosure Statement, absent the Plan, Unsecured Creditors are likely to receive *no distributions* on account of their Allowed Claims because the Debtor will be liquidated and unable to generate the future Cash that will be used to make distributions to Unsecured Creditors under the Plan.

Conversely, the Plan reasonably contemplates that Allowed Unsecured Member Claims will receive a distribution of approximately 60% on account of their Claims and that Holders of Allowed Unsecured Non-Member Claims will receive a distribution of approximately 40% on account of their Claims. Accordingly, the Plan is by far the best alternative for Creditors, which helps to explain why, as discussed below, *all creditors voting on the Plan voted in favor of it*.

*Second*, as set forth in detail below and in the Ballot Report, the Plan is supported by all of the Classes of Claims entitled to vote on the Plan. No Claim Holders voted to reject the Plan. Further, no objections to the Plan have been filed.

*Third*, the Plan complies with all applicable provisions of the Bankruptcy Code. More specifically, as demonstrated in Section V, the Plan satisfies all of the requirements of Sections 1122, 1123 and 1129.

Accordingly, the Debtor respectfully requests that the Court enter an order (i) finally approving the Disclosure Statement, (ii) confirming the Plan, and (iii) authorizing the Debtor to take any and all actions necessary to implement the provisions of the Plan.

## II.      PROCEDURAL BACKGROUND

On November 20, 2009 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (11 U.S.C. §§ 101 *et seq*.), thereby commencing the above-captioned Chapter 11 case (the "*Case*"). The Debtor continues to manage its assets and affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

On February 17, 2010, the Debtor filed the Disclosure Statement and Plan, and sought conditional approval of the Disclosure Statement. *See* Dkt. No. 25. On February 25, 2010, the Court entered an order that (i) conditionally approved the Disclosure Statement, (ii) required that the Disclosure Statement be transmitted to creditors on or before March 1, 2010, (iii) established

a March 25, 2010 deadline to vote on the Plan, (iv) established a March 25, 2010 deadline to file objections to the Disclosure Statement and Plan, and (v) set a combined hearing on the Disclosure Statement and Plan for April 14, 2010 (the "*Conditional Approval Order*").  *See* Dkt. No. 29.

On February 25, 2010, the Debtor caused the Disclosure Statement with the Plan (the "Plan Packet") to be served on all known creditors and parties in interest through BK Attorney Services, LLC, an approved third party service provider (the "*Feb. 25 Mailing*").  *See* Dkt. 30. On March 17, 2010, counsel for the Debtors determined that some of the address labels for the Feb. 25 Mailing contained incorrect "Attn:" line information.  Although the name and address of the creditor were correct, the specific person identified on the mailing was not correct for some creditors.   This problem affected 64 labels.

As a result and as a precaution, on March 17, 2010, counsel for the Debtor requested BK Attorney Services to send another copy of the Disclosure Statement to all known creditors and parties in interest and to ensure that the "Attn" line information was correct for all labels.  *See* Dkt. No. 50.

Nine holders of claims entitled to vote on the Plan filed ballots with the Court.  All such Claim holders voted in favor of confirmation, and, on March 29, 2010, the Debtor filed the Balloting Report.  *See* Dkt. No. 44.  No objections to the Disclosure Statement or Plan have been filed with the Court.

### III. VENUE AND JURISDICTION

Venue in this Court is proper pursuant to 28 U.S.C. § 1408. The proposed approval of the Disclosure Statement and confirmation of the Plan are "core" proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(L).

### IV. THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AND SHOULD BE FINALLY APPROVED

Section 1125(a)(1) requires that a disclosure statement must contain "adequate information" that would enable holders of claims to make an informed decision about the proposed plan. "Adequate information" is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan."[2] Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors entitled to vote on the plan.[3]

As an initial matter, there have not been any challenges to the sufficiency of the information in the Disclosure Statement. Beyond that, however, the Disclosure Statement does contain adequate information.

The bankruptcy court has broad discretion to determine the adequacy of information contained in a disclosure statement.[4] Congress granted bankruptcy courts discretion to facilitate

---

[2] 11 U.S.C. § 1125(a)(1).

[3] *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003).

[4] *See Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005); *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995).

the effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases.[5]

Here, the Disclosure Statement, which is based upon Official Form B25B, contains information relating to, among other things: (a) background on the Debtor, its management and the events leading up to the bankruptcy filing; (b) an overview of the Plan; (c) information regarding the treatment of Claims and Interests under the Plan; (d) a summary of confirmation requirement and procedures; (e) a liquidation analysis; and (f) a feasibility analysis.

In addition, the Disclosure Statement complies with Local Rule 3016-1 in that, among other things, it contains a narrative section describing the Plan and the treatment that creditors will receive under the Plan, as well as historical and forward-looking financial information about the Debtor and the Reorganized Debtor.

Thus, the Debtor believes that the Disclosure Statement contains "adequate information," as that phrase is defined in Section 1125(a)(1) of the Bankruptcy Code, and asks that the Court finally approve the Disclosure Statement.

## V.    THE PLAN SATISFIES EACH OF THE REQUIREMENTS FOR CONFIRMATION UNDER THE BANKRUPTCY CODE

The Plan complies with all relevant sections of the Bankruptcy Code relating to confirmation of a plan, including Sections 1122, 1123 and 1129.

---

[5] *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D. N.Y. 1988) (holding that the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties").

A.  **The Plan fully complies with the applicable provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

Section 1129(a)(1) requires that a plan comply with the applicable provisions of chapter 11. The legislative history of Section 1129(a)(1) indicates that a principle objective of this provision is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.[6] The Plan complies with these provisions in all respects.

1.  **The Plan satisfies the classification requirements of 11 U.S.C. § 1122 by placing only substantially similar Claims or Interests in each Class**.

"Absent agreement to the contrary, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[7] This requirement of substantial similarity does not mandate that all claims or interests within a particular class must be identical.[8] Instead, Section 1122 of the Bankruptcy Code provides a plan proponent with considerable flexibility and discretion in placing similar claims into different classes, provided there is a rational basis for doing so.[9] The Plan properly

---

[6] *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); *In re Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988); *In re S&W Enterprise*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984).

[7] 11 U.S.C. § 1122(a).

[8] *See In re DRW Prop. Co*. 82, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986). Section 1122 likewise does not require classifying claims together simply because they share some attributes. *See, e.g., In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060 (3d Cir. 1987) ("[t]he express language of this statute explicitly forbids a plan from placing dissimilar claims in the same class; it does not, though, address the presence of similar claims in different classes").

[9] *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158-59 (3d Cir. 1993) (as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 585 (6th Cir. 1986) ("section 1122(a) specifies that only claims which are 'substantially similar' may be placed in the same class. It does not

classifies Claims and Interests into the following five Classes based upon differences in the factual and legal nature as well as priority of such Claims and Interests:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Unsecured Member Claims | Impaired | Entitled to Vote |
| Class 3 - General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – Convenience Claims Under 11 U.S.C. § 1122(b) | Impaired | Entitled to Vote |
| Class 5 – Secured Claims | Unimpaired | Not Entitled to Vote |

The Plan's classification of Claims and Interests satisfies the requirements of Section 1122 because the Claims or Interests in each Class differ from the Claims or Interests in each other Class in a business, legal or factual nature or based on relevant criteria.

**2.    The Plan meets the requirements set forth in 11 U.S.C. § 1123(a).**

Section 1123(a) sets forth seven requirements with which every chapter 11 plan must comply. The Plan fully complies with each requirement.

First, Section 1123(a)(1) requires that a plan designate classes of claims, other than claims of a priority specified in Sections 507(a)(1), (2) and (8). The Plan designates classes of Claims and Interests as required by Section 1123(a)(1).[10] The Plan does not classify

---

require that similar claims must be grouped together, but merely that any group created must be homogenous."); *In re Local Union 722 Int'l Bhd. of Teamster*s, 414 B.R. 443, 452 (Bankr. N.D. Ill. 2009) ("The plan proponent enjoys a wide latitude of discretion in classifying claims.")

[10] *See* Plan at Article 3.

Administrative Claims or Priority Tax Claims because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be impaired.[11]

Second, Section 1123(a)(2) requires that a plan specify those classes of claims or interests that are not impaired. As set forth in the Plan, Classes 1 and 5 are not impaired.

Third, Section 1123(a)(3) requires that a plan specify the treatment of those classes of claims or interests that are impaired. Article 3 of the Plan identifies which Classes of Claims and Interests are impaired and Article 4 of the Plan sets forth the treatment of such Impaired Classes of Claims and Interests. Thus, the requirements of Section 1123(a)(3) have been satisfied.

Fourth, Section 1123(a)(4) requires that a plan provide the same treatment for each claim in a particular class, unless the holder of a claim in that class agrees to less favorable treatment for such claim. All of the Holders of Claims or Interests within each of the Classes are treated identically under the Plan as required by Section 1123(a)(4) of the Bankruptcy Code.[12]

Fifth, Section 1123(a)(4) requires that a plan provide adequate means for its implementation. Here, Article 5 (Means for Executing the Plan) and other provisions of the Plan set forth the means for its implementation. Specifically, all of the Debtor's assets will revest in the Reorganized Debtor upon the Effective Date. The Plan will be funded by the Reorganized Debtor's cash on hand as of the Effective Date (less certain operating expenses and amounts needed to pay unclassified Claims and Allowed Convenience Claims) and the Reorganized Debtor's Annual Net Income for the five years following the Effective Date or until Allowed Class 2 and Class 3 Claims are paid in full. The Reorganized Debtor will establish a Creditor Trust for the benefit of Allowed Class 2 and Class 3 Claims to hold all funds contributed by the

---

[11] *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9).

[12] *See* Plan at Article 4.

Reorganized Debtor. The Reorganized Debtor will be responsible for making the distributions set forth in the Plan to Holders of Allowed Claims. In addition, the Addison Property will be surrendered to the Holder of Allowed Secured Claims in complete satisfaction of such Claims. The Debtors submits that the Plan provides adequate means for its implementation.

Sixth, Section 1123(a)(6) requires inclusion of a prohibition in the charter of corporate debtors against the issuance of "nonvoting equity securities" and places various requirements on the debtor if it has multiple classes of securities. This provision is not applicable here.

Finally, Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors, equity security holders and public policy with respect to the manner of selection of any officer, director or trustee under a plan and any successor thereto." Under the Plan, no change to the Debtor's corporate structure is contemplated and the Debtor's existing Board of Directors will remain in place. Therefore, the Debtor submits that Section 1123(a)(7) is satisfied.

**B.     The Debtor has fully complied with the applicable provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

Section 1129(a)(2) provides that a court may confirm a plan only if "[t]he proponent of the plan complies with the applicable provisions of this title." The principal purpose of Section 1129(a)(2) is to assure that the plan proponent has complied with the disclosure and solicitation requirements of Sections 1125 and 1126.[13] The Debtor has complied with the applicable provisions of the Bankruptcy Code, including Sections 1125 and 1126.

**1.     The Debtor has complied with 11 U.S.C. § 1125.**

---

[13] *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126; H.R. Rep. No. 595, 95th Cong., 1st Sess. 412; *In re PWS Holding Corp.,* 228 F.3d 224, 248 (3d Cir. 2000); *In re Sentinel Mgmt. Group*, 398 B.R. 281, 303 (Bankr. N.D. Ill. 2008).

Section 1125(f) specifies the procedures for approving a disclosure statement in a small business case like this one.  In pertinent part, it provides that:

> (f) Notwithstanding subsection (b), in a small business case—
>
> (1) the court may determine that the plan itself provides adequate information and that a separate disclosure statement is not necessary;
>
> (2) the court may approve a disclosure statement submitted on standard forms approved by the court or adopted under section 2075 of title 28; and
>
> (3)(A) the court may conditionally approve a disclosure statement subject to final approval after notice and a hearing;
>
> (B) acceptances and rejections of a plan may be solicited based on a conditionally approved disclosure statement if the debtor provides adequate information to each holder of a claim or interest that is solicited, but a conditionally approved disclosure statement shall be mailed not later than 25 days before the date of the hearing on confirmation of the plan; and
>
> (C) the hearing on the disclosure statement may be combined with the hearing on confirmation of a plan.

As noted above, the Court conditionally approved the Disclosure Statement on February 25, 2010 and copies of the Disclosure Statement were mailed to all known creditors more than 25 days prior to the hearing on confirmation of the Plan (this holds true for both the February 25 and March 17 mailings).   Further, as demonstrated in Section IV, *supra*, the Disclosure Statement contains adequate information and should be finally approved.  Therefore, the Debtor has satisfied the requirements of Section 1125.

### 2. The Plan complies with the requirements for acceptance of a plan under 11 U.S.C. § 1126.

Section 1126 specifies the requirements for acceptance of a plan - only holders of allowed claims and equity interests in impaired classes that will receive or retain property under

a plan on account of such claims or equity interests may vote to accept or reject a plan. In accordance with Sections 1125(f)(3)(B) and 1126, the Debtor solicited acceptances and rejections of the Plan from the Holders of all Allowed Claims in each Impaired Class that are to receive distributions under the Plan. Classes 1 and 5 are not impaired under the Plan. Classes 2, 3 and 4 are impaired and will be receiving distributions under the Plan. Accordingly, pursuant to Section 1126(a), the Claim Holders in these Classes are the only Claimants entitled to vote.

Pursuant to Section 1126(c), a class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that have accepted or rejected the plan. As set forth above and in the Voting Report, all Holders of Claims that voted on the Plan voted in favor of the Plan. Thus, the requirements of Section 1126(c) have been satisfied.

C.     **The Debtor has proposed the Plan in good faith (11 U.S.C. § 1129(a)(3)).**

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." Although the term "good faith" is not defined in the Bankruptcy Code, the courts have determined that "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code."[14] Moreover, the requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a chapter 11 plan.[15]

Here, the proposed Plan accomplishes a result consistent with the objectives and purposes of the Bankruptcy Code. Specifically, the Plan enables Holders of Claims to realize the highest

---

[14] *PWS Holding*, 228 F.3d at 242.

[15] *See In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir. 1984); *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984) (citation omitted).

possible recoveries on their Allowed Claims under the circumstances of this Chapter 11 Case. Indeed, the Debtor believes that the Plan provides Creditors with the greatest distribution possible, and is in full accordance with the priority scheme of the Bankruptcy Code.

If the Plan is not confirmed, the Debtor does not believe that a different plan or liquidation under chapter 7 will result in any better recovery for any Class. In fact, in the absence of the Plan, the Debtor will be liquidated and in that event creditors are likely to receive nothing on account of their Allowed Claims. Thus, the Debtor submits that the good faith requirement of Section 1129(a)(3) has been satisfied.

**D.    The Plan provides for Bankruptcy Court approval of certain administrative payments (11 U.S.C. § 1129(a)(4)).**

Section 1129(a)(4) requires that certain professional fees and expenses be paid by a plan proponent, the debtor or a person issuing securities or acquiring property under the Plan be subject to approval of the court as reasonable. Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to full disclosure, review and approval by the court as to their reasonableness.[16]

Pursuant the Plan, all Allowed Administrative Expenses other than legal professional fees will be paid by either the Debtor or the Reorganized Debtor, and sets forth the procedure to resolving any disputed Administrative Claims.[17]

With regard to the fees of the Debtor's bankruptcy counsel (there are no other professionals), upon the Effective Date of the Plan, counsel will waive any fees allowed by the Bankruptcy Court in excess of the $15,000, which is the amount of the retainer counsel obtained

---

[16] *See, e.g.*, *In re River Village Assocs.*, 161 B.R. 127, 141 (Bankr. E.D. Pa. 1993); *New York Life Ins. Co. v. Chase Manhattan Bank, N.A. (In re Texaco Inc.)*, 85 F.R. 934, 939 (Bankr. S.D.N.Y. 1988).

[17] *See* Plan at Articles 2.2(a) and 6.2.

from the Debtor prior to the Petition Date. Professional fees remain subject to review and approval under Section 330 of the Bankruptcy Code. The Plan therefore satisfies the requirements of Section 1129(a)(4).[18]

### E. Information has been disclosed about post-emergence directors and officers and their continuance in office is consistent with public policy (11 U.S.C. § 1129(a)(5)).

Section 1129(a)(5)(A)(i) provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan." Section 1129(a)(5)(ii) requires that the appointment to or continuance in such office of such party be "consistent with the interests of creditors and equity security holders and with public policy." Similarly, Section 1129(a)(5)(B) requires that a plan disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation" for such insider.

Pursuant to Article 5 of the Plan, the individuals listed in the Debtor's Statement of Financial Affairs as current offices or directors will have the opportunity to continue to serve as directors and officers of the Reorganized Debtor without compensation. The Debtor's officers and directors prior to the Petition Date also served without compensation. The Debtor submits that the continued service of the Debtor's officers and directors is consistent with public policy and that the requirements of Section 1129(a)(5) have been satisfied

---

[18] *See, e.g.*, *In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988)* (requirements of section 1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative expenses); *In re Future Energy Corp., 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988)* ("Court approval of payments for services and expenses is governed by various Code provisions - e.g., §§ 328, 329, 330, 331, and 503(b) - and need not be explicitly provided for in a Chapter 11 plan").

14

**F.    No governmental regulatory commission has jurisdiction over the Debtor (11 U.S.C. § 1129(a)(6)).**

Section 1129(a)(6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. Section 1129(a)(6) does not apply here because there is no rate change provided for in the Plan and, to the best of the Debtor's information and belief, it is not subject to the jurisdiction of any regulatory commission.

**G.    The Plan is in the best interests of creditors and interest holders (11 U.S.C. § 1129(a)(7)).**

Section 1129(a)(7) provides that a court may confirm a plan only if the plan meets the "best interests of creditors" test (the "*Best Interest Test*"). The Best Interest Test requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class (i) has accepted the plan or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.[19]

As Section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. If a class of claims or equity interests unanimously accepts the plan, the Best Interests Test is deemed satisfied for all members of that class. Here, the Best Interest Test is deemed satisfied with respect to all Classes that were entitled to vote on the Plan, since Classes 2, 3 and 4 voted to accept the Plan.

---

[19] 11 U.S.C. §§ 1129(a)(7)(A)(i)-(ii).

15

**H.     The Plan has been accepted by all Classes entitled to vote (11 U.S.C. § 1129(a)(8)).**

Section 1129(a)(8) requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Pursuant to Section 1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount of the claims that actually vote in such class and more than one-half in number of the claims that actually vote in such class vote to accept the plan. A class that is unimpaired under a plan, and each holder of a claim of such class, is conclusively presumed to have accepted the plan. *See* 11 U.S.C. § 1126(f).

Classes 1 and 5, which are unimpaired under the Plan, are deemed to have accepted the Plan, and Classes 2, 3 and 4, all voted in favor of the Plan. Thus, Section 1129(a)(8) is satisfied.

**I.     The Plan provides for the statutorily mandated treatment of Administrative Claims, Priority Tax Claims and Priority Claims (11 U.S.C. § 1129(a)(9)).**

Section 1129(a)(9) requires that, except to the extent that the holder of a particular claim has agreed to a different treatment, a plan must provide for all holders of allowed administrative expense claims to be paid in full in cash on the effective date, and for all holders of allowed priority claims to be paid in full in cash either on the effective date of a plan or over time with interest, depending on the specific type of claim.

Article 2 of the Plan provides for payment of Allowed Administrative Claims and Allowed Priority Tax Claims in the manner required by Section 1129(a)(9), and Article 4.1(a) of the Plan provides for the payment of Allowed Other Priority Claims in the manner required by Section 1129(a)(9) of the Bankruptcy Code.

**J.     At least one impaired class of claims has accepted the Plan (11 U.S.C. § 1129(a)(10)).**

Section 1129(a)(10) provides that at least one impaired class of claims or equity interests must accept a plan, without including the acceptance of the plan by any insider. As set forth above, all impaired Classes voted to accept the Plan.

16

**K.     The Plan is feasible (11 U.S.C. § 1129(a)(11)).**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find that the plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[20]

A debtor must prove a chapter 11 plan's feasibility by the preponderance of evidence.[21] The threshold of proof necessary to satisfy the requirement is relatively low.[22] Courts are merely required to determine whether a plan "offers a reasonable probability of success."[23]

The Plan is feasible because (i) the Estate is administratively solvent and all Allowed Administrative Claims, Priority Claims, Priority Tax Claims will be paid in full from Cash in the Debtor's or Reorganized Debtor's possession, and (ii) there are adequate funds to make *pro rata* distributions to the Holders of Allowed Unsecured Claims pursuant to the terms of the Plan.

The Debtor believes that its estimated distributions as set forth in Disclosure Statement are accurate. It is important to recognize, however, that the Plan can be confirmed without the

---

[20] 11 U.S.C. § 1129(a)(11).

[21] *See Heartland Fed. Sav. & Loan Ass 'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II),* 994 F.2d 1160, 1165 (5th Cir. 1993) (rejecting "clear and convincing" as the applicable standard).

[22] *In re Sea Garden Motel and Apartments,* 195 B.R. 294, 304 (Bankr. D. N.J. 1996) (quotations omitted).

[23] *In re Landing Assoc., Ltd.,* 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993) (no plan can offer absolute certainty). *See also* In re Repurchase Corp., 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005) ("In determining feasibility, the plan's proponent does not need to establish that the plan carries a guarantee of success."); *The Ins. Co. of New York v. Patrician St. Joseph Partners (In re Patrician St. Joseph Partners),* 169 B.R. 669, 674 (Bankr. D. Ariz. 1994) (plan meets feasibility standard if the plan offers a reasonable prospect of success and is workable).

17

need to make a finding as to the exact distribution that impaired Classes will receive. In fact, but for Claims that must be paid in full under Section 1129(a), the Plan does not promise any particular recovery to the Holders of Allowed Claims in Classes 2, 3 and 4.

**L.** **The Plan provides for the payment of all fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)).**

Section 1129(a)(12) provides that a court may confirm a plan only if "[a]ll fees payable under § 1930 of title 28, as determined by the court at the hearing on confirmation of a plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Plan satisfies this requirement because it provides that all such fees will be paid on or before the Effective Date. *See* Plan at Article 14.1.

**M.** **No retirement plans or domestic support obligations (11 U.S.C. §§ 1129(a)(13)-(14)).**

Sections 1129(a)(13)-(14) do not apply in this case because the Debtor did not maintain any retirement plans providing retiree benefits and the Debtor is not required by a judicial or administrative order, or by statute, to pay domestic support obligations.

**N.** **The Debtor is not an individual (11 U.S.C. § 1129(a)(15)).**

The Debtor is not an individual, and Section 1129(a)(15) is not applicable.

**O.** **No applicable nonbankruptcy law regarding transfers (11 U.S.C. § 1129(a)(16)).**

Section 1129(a)(16) requires all transfers of property of a plan to be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfers of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust. All transfers under the Plan comply with any such applicable nonbankruptcy law. The Plan therefore satisfies the requirements of Section 1129(a)(16).

**Q.** **The principal purpose of the Plan is not avoidance of taxes (11 U.S.C. § 1129(d)).**

18

No party that is a governmental unit has requested that the Court not confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. The principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of Section 1129(d).

## VI. CONCLUSION

For all of the reasons stated herein, the Debtor respectfully submits that the Plan meets each and every requirement for confirmation provided by Sections 1122, 1123 and 1129 of the Bankruptcy Code. Accordingly, the Debtor requests that the Court enter an order (i) confirming the Plan; (ii) authorizing the Debtor to take any and all actions necessary to implement the provisions of the Plan; and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated: April 12, 2010

Respectfully submitted,

HOME BUILDERS ASSOCIATION OF GREATER CHICAGO, Debtor and Debtor in Possession

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
**THE LAW OFFICE OF
   WILLIAM J. FACTOR, LTD.**
1363 Shermer Road, Suite 224
Northbrook, IL 60062
Tel: (847) 239-7248
Fax: (847) 574-8233
Email: wfactor@wfactorlaw.com
       slorber@wfactorlaw.com